**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROSE MINGE, )
           )    Case No. 20-cv-6935
         Plaintiff, )
           )
         v. )    Judge John Robert Blakey
           )
COOK COUNTY, ILLINOIS d/b/a )
COOK COUNTY HEALTH AND )
HOSPITAL SYSTEMS d/b/a JOHN H. )
STROGER HOSPITAL OF COOK COUNTY )
           )
         Defendant. )

## MEMORANDUM OPINION AND ORDER

In this employment case, Plaintiff Rose Minge sues her employer, Defendant Cook County d/b/a Cook County Health Systems d/b/a John H. Stroger Hospital of Cook County (the "County"). In her second amended complaint, [22], Plaintiff alleges discrimination based upon her disability, age, religion, and race (Counts I, III, V, VI, respectively) and retaliation in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts II, IV, and VII, respectively). The County moves to dismiss all but Count V pursuant to Federal Rule of Civil Procedure 12(b)(6) and requests that discovery be stayed on Count V until the Court has ruled on the County's partial motion to dismiss. [28] at 3 n.1. For the reasons explained below, the Court grants in part, and denies in part, the County's partial motion to dismiss [28]: the Court dismisses without prejudice Plaintiff's Title VII claim (Count

1

VI), but otherwise denies the motion. The Court also denies as moot the County's request to stay discovery.

## I.  Facts

For present purposes, this Court assumes as true the following facts, drawn from Plaintiff's second amended complaint, [22].

The County operates John H. Stroger Memorial Hospital (the "Hospital") where Plaintiff, who is black, over 40 years of age, and diagnosed with depression, has been employed since 1995. *Id.* ¶¶ 7, 76, 99, 127.  In early 2018, Plaintiff came under the direct supervision of Kandice Hightower and Loretta Wiley who, on a near daily basis, began publicly reprimanding Plaintiff in front of her co-workers in a loud, menacing, and demeaning tone. *Id.* ¶ 11–12.  These public reprimands "intimidated and humiliated" Plaintiff, as they often occurred while Hightower and Wiley stood in "very close proximity" to Plaintiff while she was seated at her desk. *Id.* ¶ 13. Hightower and Wiley also issued Plaintiff write-ups, warnings, and suspensions without pay, and they threatened her future employment with the Hospital. *Id.* ¶ 18. Plaintiff recounts specific instances where Hightower unfairly reprimanded her, such as when Hightower yelled at her for knocking over a garbage can and for not ordering the correct equipment; she also alleges that, on one occasion, Hightower adversely altered Plaintiff's performance evaluation after Plaintiff signed it. *Id.* ¶¶ 14–15, 17, 31.  Hightower and Wiley also excluded Plaintiff from department meetings and communications, which isolated Plaintiff in her job and placed her at a significant disadvantage for future advancement in the Hospital. *Id.* ¶ 20.

Later, Director Darleen Vlahovic joined Hightower and Wiley in their public reprimands of Plaintiff and began micro-managing Plaintiff by closely monitoring the minutia of her work, staring at Plaintiff, and standing directly over Plaintiff while she worked. *Id.* ¶¶ 27, 32. Hightower, Wiley, and Vlahovic, who are "significantly younger" than Plaintiff, did not do this with younger, non-disabled, and non-black employees. *Id.* ¶¶ 28, 88, 100, 105, 137. Hightower's and Wiley's treatment of Plaintiff encouraged other employees to berate Plaintiff and call her offensive names such as "ho" and "bitch"; Hightower and Wiley took no action when Plaintiff reported the misconduct of other employees. *Id.* ¶¶ 17, 19.

Plaintiff's supervisors, including Hightower, Wiley, and Vlahovic, were aware of Plaintiff's depression because Plaintiff self-disclosed her status to them on multiple occasions and previously took mental health leaves of absence. *Id.* ¶ 77. Yet Plaintiff's supervisors repeatedly rejected Plaintiff's complaints, often calling Plaintiff "crazy" and using other terms suggesting that in their view Plaintiff was mentally unsound. *Id.* ¶ 82. On other occasions, Hightower "publicly called out" Plaintiff in terms of her age. *Id.* ¶ 103. On another occasion, the Hospital's Associate Director of Medical Surgery commented that Plaintiff's blonde hair made her look like Donald Trump, which "humiliated" Plaintiff in front of her co-workers and forced her to seek assistance from the president of her local union over the incident. *Id.* ¶¶ 128–131, 134. Vlahovic, who was present when the remark was made, laughed in response to the comment. *Id.* ¶ 132.

In the Spring of 2018, Plaintiff complained to the Hospital's Equal Employment Opportunity ("EEO") Officer, but it did not help; the complaint made things worse, as Hightower and Wiley began reprimanding Plaintiff more frequently and began punishing Plaintiff with discipline and other negative actions documented in Plaintiff's personnel file. *Id.* ¶ 22. As a result of the work environment created by the actions of her supervisors and co-workers, Plaintiff went on a mental health leave of absence from July 23, 2018 until September 5, 2018, during which she received only 60% of her normal salary. *Id.* ¶ 23–25. While on leave, Plaintiff attended 19 therapy sessions with a social worker and psychiatrist. *Id.* ¶ 24.

On October 1, 2018, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), claiming that she experienced harassment due to her age and in retaliation for her complaints to the Hospital's EEO officer. *Id.* ¶ 26; [22-1]. Plaintiff eventually filed five additional charges of discrimination with the IDHR and EEOC,[1] for a total of six, as follows, [22] ¶¶ 93, 114, 144:

---

[1] Plaintiff attached a copy of all six charges of discrimination to her complaint, and the Court may thus consider them today. *See* Fed. R. Civ. P. 11(c); *Geinosky v. City of Chi.*, 675 F.3d 743, 746 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

- A charge filed on March 1, 2019, complaining of retaliation and discrimination based on religion, age, and disability, [22] ¶ 41; [22-3];

- A charge filed on June 10, 2019, complaining of retaliation and discrimination based on religion, age, and disability, *id.* ¶ 33;[2] [22-2];

- A charge filed on August 21, 2019, complaining of retaliation and discrimination based on religion, age, disability, race, and sex, [22] ¶ 43; [22-4];

- A charge filed on November 6, 2019, complaining of retaliation and discrimination based on religion, age, disability, race, and sex, [22] ¶ 43; [22-5]; and

- A charge filed on April 27, 2020, complaining of retaliation and discrimination based on religion, age, disability, race, and sex, [22] ¶ 60; [22-6].

Plaintiff alleges that she experienced increased verbal harassment and isolation at work after filing these charges. [22] ¶¶ 50, 93, 114, 144.

Upon Plaintiff's return from her mental health leave, she experienced the same harassment, emotional distress, and mental anguish that compelled her to take a leave of absence in the first place. [22] ¶ 29. As a result, Plaintiff went on a second leave of absence from October 5, 2018 until January 8, 2019, this time without pay. *Id.* ¶ 30. When she returned from this second leave of absence in January 2019, Plaintiff presented the Hospital's EEO officer with a letter from her psychiatrist requesting a job reassignment due to the humiliation and harassment she

---

[2] In her complaint, Plaintiff alleges that she filed this charge of discrimination on June 11, 2019, but the charge attached as an exhibit to her complaint clearly indicates that it was filed on June 10, 2019. Thus, the June 10, 2019 filing date controls. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

experienced in her current position. *Id.* ¶ 78–80. The County denied Plaintiff's request. *Id.* ¶ 81.

Upon her return from the second leave of absence, Plaintiff continued to experience verbal harassment from her supervisors and co-workers. [22] ¶¶ 32, 50, 61. Starting in January 2019, the County also suspended Plaintiff without pay on several occasions:

- In or about January 2019, the County suspended Plaintiff for five days for refusing to adhere to the County's mandatory vaccination policy after the County denied her a religious accommodation for her Pentecostal faith, *id.* ¶ 34-39;[3]

- On March 7, 2019, the County suspended Plaintiff for one day for violating a workplace policy, *id.* ¶ 40;

- In August 2019, the County suspended Plaintiff for three days for engaging in conduct that other employees, who were not disciplined, also engaged in, *id.* ¶ 42;

- In October 2019, the County suspended Plaintiff for five days for sending electronic correspondence to department heads to protect herself from allegations that she was not doing her job and after an employee filed a complaint against her, *id.* ¶ 45–48; and

- On or about December 12, 2020, the County suspended Plaintiff for twenty-nine days after she was physically assaulted by two employees while the two employees involved in the altercation were not suspended, *id.* ¶¶ 69–72.

Plaintiff's supervisors also denied Plaintiff workplace opportunities that were provided to other employees not in her protected class:

- In January 2020, Hightower denied Plaintiff's request to register for computer classes to support Plaintiff in her daily work activities, which

---

[3] Plaintiff avers that this five-day suspension in January 2019 occurred because the County denied her a religious accommodation to the County's mandatory vaccination policy. [22] ¶¶ 34–39. Plaintiff's religious discrimination claim (Count V) is not the subject of the County's motion to dismiss.

obstructed Plaintiff's opportunities for advancement at the Hospital, *id.* ¶¶ 51–54;

- Management failed to afford Plaintiff the discretion to schedule her breaks and lunches (afforded to other employees), which interfered with Plaintiff's ability to develop relationships with the other employees critical to her development as an employee, *id.* ¶¶ 55–56;

- Management refused to allow Plaintiff to dress casually when working weekends, while allowing all other employees working on weekends to dress casually, *id.* ¶¶ 57–59; and

- On or about December 3, 2020, Hightower and Vlahovic ignored Plaintiff's request for supplies necessary to perform her job, thus interfering with Plaintiff's job duties and her opportunities for promotion. *id.* ¶¶ 62–68.

On August 25, 2020, Plaintiff received a right-to-sue notice from the EEOC for all six of her discrimination charges. [22] ¶ 73. Appearing *pro se*, Plaintiff initiated this lawsuit on November 23, 2020, [1], [3], and, after obtaining counsel, [7], amended her complaint for the second time on July 16, 2021, [22]. In her second amended complaint, Plaintiff asserts claims against the County for discrimination based on her disability (Count I), age (Count III), religion (Count V), and race (Count VI), and for retaliation in violation of the ADA (Count II), ADEA (Count IV), and Title VII (Count VII). The County's 12(b)(6) partial motion to dismiss seeks dismissal of all counts, except for Plaintiff's religious discrimination claim (Count V). [28].

## II.    Legal Standard

Fed. R. Civ. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" providing a defendant with "fair notice" of the claim and the "grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)). To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Plausibility, however, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Id.* A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the complaint, this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded allegations as true; the Court need not, however, accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

## III. Analysis

The County seeks to dismiss all but Plaintiff's religious discrimination claim (Count V), arguing that Plaintiff's EEOC charges are factually insufficient and that the allegations in Plaintiff's second amended complaint fail to state a claim. The Court addresses each argument in turn.

### A.    Factual Sufficiency of Discrimination Charges

The County first challenges the factual sufficiency of the six EEOC charges Plaintiff filed prior to bringing this lawsuit and argues that they fail to describe an adverse employment action and fail to connect those actions to a protected activity or her membership in a protected class.  [28] at 3–6.  Not so.

Plaintiff's EEOC charges do allege adverse employment actions.  Three of the six administrative charges plainly state that the County suspended Plaintiff from work.  *See* [22-3] (stating that the February 17, 2019, and March 7, 2019, suspensions were retaliatory and due to Plaintiff's age and disability); [22-4] (stating that the August 26, 2019, suspension was retaliatory and due to Plaintiff's age, race, sex, and disability); [22-5] (stating that the November 4, 2019, suspension was retaliatory and due to Plaintiff's age, race, sex, and disability).  In addition, all six charges state that Plaintiff experienced harassment during her employment based upon her membership in a protected class and in retaliation for engaging in protected activities.  *See* [22-1]–[22-6].  Although the factual allegations in the administrative charges lack detail, the law permits such charges to be alleged generally.  *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (Because "most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint.").

To the extent the County argues that Plaintiff's claims here are not "like or reasonably related" to the allegations in her administrative charges, a requirement under the ADA, ADEA, and Title VII, *see Flannery v. Recording Indus. Ass'n of Am.*,

354 F.3d 632, 637 (7th Cir. 2004) (ADA); *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (ADEA); *Chaidez v. Ford Motor Company*, 937 F.3d 998, 1004 (7th Cir. 2019) (Title VII), the County's assertion finds some support in the record.  For example, Plaintiff's allegation concerning the denial of her request for reassignment as a reasonable accommodation for her disability appears nowhere in her administrative charges.  *See* [22] ¶¶ 76–81.  And, although Plaintiff alleges here that the employee likening Plaintiff's blonde hair to that of Donald Trump constituted race-based harassment, in her October 1, 2018, discrimination charge she cited that same incident to demonstrate age-based harassment. *Compare* [22] ¶ 128–29 *with* [22-1].

Under the law, Plaintiff may not proceed here on claims she failed to raise in her discrimination charge.  And because this Trump comment is the sole basis of her race discrimination claim, the Court dismisses that claim (Count VI).[4]  She may proceed on the remainder of her claims, which are based upon allegations that are like or reasonably related to those in her EEOC charges.

---

[4] With regard to race, Plaintiff's discrimination charges allege that Hightower, who is also black, subjected Plaintiff to a hostile work environment when, on a daily basis, Hightower "closely observed" Plaintiff's work; constantly yelled at Plaintiff; allowed Plaintiff's coworkers to "intimidate" her; suspended Plaintiff for three days in August 2019 and for five days due to an employee complaint and for sending emails to department heads; and subjected Plaintiff to unequal terms and conditions of employment; she represents in her charges that similarly-situated non-black employees were treated more favorably.  *See* [22-4] at 3, 6; [22-5] at 3, 6; [22-6] at 3, 6.  Although she includes all of these allegations in her complaint here generally, she specifically limits her race discrimination claim (Count VI) to the Trump remark, which was not made by Hightower.  *See* [22] ¶¶ 126–138.  In contrast, Plaintiff's discrimination claims based on disability (Count I) and age (Count III) attribute the allegations described in her complaint generally to a protected characteristic, *see id.* ¶¶ 82, 105.

10

### B. ADA and ADEA Hostile Work Environment Claims (Counts I and III)

Next, the County moves to dismiss Plaintiff's claims for disability and age discrimination, arguing that Plaintiff failed to allege an adverse employment action required to sufficiently state a claim under the ADA (Count I) and the ADEA (Count III). [28] at 7–8. As confirmed in her response to the County's motion to dismiss, Plaintiff brings Counts I and III under a hostile work environment theory of discrimination, so the issue here is whether Plaintiff has plausibly alleged a hostile work environment under the ADA and the ADEA. *See* [22] ¶¶ 84, 106; [30] at 5 (The allegations must be "sufficient to demonstrate and put Defendant on notice that a hostile work environment is claimed.").

The ADA and the ADEA, like Title VII, forbid employers from discriminating with respect to the "terms, conditions, or privileges of employment" based upon an individual's membership in a protected class. 42 U.S.C. § 12112; 29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000e-2(a)(1). Hostile work environment claims are premised upon a theory that harassment based on an individual's membership in a protected class remains so severe or pervasive as to alter the terms, conditions, and privileges of employment such that the workplace becomes "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). *See also Alamo v. Bliss*, 846 F.3d 541, 549 (7th Cir. 2017) ("The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or

abusive environment.") (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)). The ADA includes such claims, and the Seventh Circuit has long assumed, without deciding, that such claims are also cognizable under the ADEA. *See Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (ADA); *Tyburski v. City of Chi.*, 964 F.3d 590, 600 (7th Cir. 2020) (ADEA).

Because the Seventh Circuit uses Title VII's framework for analyzing hostile work environment claims brought under the ADA and the ADEA, the Court does so here as well. *See Ford*, 942 F.3d at 852; *Tyburski*, 964 F.3d at 600. To state a hostile work environment claim, a plaintiff must allege that: (1) she was subject to "unwelcome harassment"; (2) the harassment occurred for a reason forbidden by the ADA and the ADEA; (3) the harassment was "severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment"; and (4) a basis for employer liability exists. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015).

The County first argues that the complained-of actions are not severe enough to be actionable under a hostile work environment theory of discrimination because Plaintiff's workplace "cannot be deemed hellish." [28] at 12. But the statutes do not require that a workplace be "hellish" to be actionable. *See Alamo*, 864 F.3d at 550 ("[A] workplace need not be 'hellish' to constitute a hostile work environment."). Instead, to rise to the "level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship." *Huri*, 804 F.3d at 834. In determining whether

alleged harassment remains sufficiently severe or pervasive, courts consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo*, 864 F.3d at 549–50.

While the second amended complaint presents a close call, Plaintiff alleges sufficient facts to plausibly show the existence of an abusive work environment. Some of Plaintiff's allegations—such as the denial to dress casually on weekends, [22] ¶¶ 57–59, supervisors referring to Plaintiff as "crazy," *id.* ¶ 82, and Hightower "call[ing] out Plaintiff in terms of her age," *id.* ¶ 103—plainly do not suffice and instead fall into the category of "offhand comments, isolated incidents, and simple teasing" that do not rise to the level of conduct altering the terms and conditions of employment. *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012); *see also e.g.*, *Tyburski*, 964 F.3d at 602 ("[E]ven insults specifically referencing age do not necessarily rise to the level of actionable harassment."); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (holding derogatory statements by co-workers and co-workers referencing plaintiff's mental stability did not alter the conditions of her employment).

But considering the totality of Plaintiff's factual allegations and the work environment in which they happened, *Alamo*, 864 F.3d at 551, the Court declines to foreclose Plaintiff's claims on the current record. Plaintiff alleges several occasions where she was suspended without pay, [22] ¶¶ 40, 42, 45–48, 69–72, and she describes

a litany of instances where she was yelled at, excluded from the Hospital's meetings and communications, *Id.* ¶ 20, and denied supplies and training, *id.* ¶ 54, 68, all of which interfered with her ability to do her job and negatively impacted her opportunities for advancement. *Id.* ¶¶ 20, 54, 67. In addition, Plaintiff alleges that her supervisors' mistreatment created an atmosphere that encouraged other employees to mistreat Plaintiff: she alleges that she was called offensive slurs such as "ho" and "bitch" by other employees, that she was physically attacked on one occasion, and that she had to take two mental health leaves due to the "anguish" she experienced in her work environment. *Id.* ¶¶ 17, 19, 23, 24, 29, 30, 70. These allegations, if developed more fully in discovery, could "unreasonably interfere with an employee's work performance" and thus, amount to an alteration to the terms, conditions, and privileges of Plaintiff's employment. *Alamo*, 864 F.3d at 550.

Next, the County argues that Plaintiff's claims cannot state a claim under a hostile work environment theory of discrimination, because she has not alleged that the complained-of actions were motivated by a discriminatory purpose. [28] at 11–12. Not so. First, the complained-of conduct need not be explicitly based upon a protected characteristic. The Seventh Circuit has held that the conduct at issue need only have "a racial character *or* purpose" (or disability or age-based). *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (emphasis added); *see also Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) ("[W]e underscore that Anderson's conduct need not have been explicitly sexual or racial in order to create a hostile environment . . .. The complained of conduct must have either a sexual or

14

racial character or purpose to support a Title VII claim."). In other words, the ADA and the ADEA, like Title VII, prohibit severe or pervasive conduct if it is motivated by a protected characteristic, notwithstanding the fact that the conduct itself might appear facially neutral. *See Cole v. Bd. of Trustees of Northern Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) ("[F]orms of harassment that might seem neutral in terms of race (or sex or other protected status) can contribute to a hostile work environment if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status.").

Again, the second amended complaint suffices, and this Court finds that Plaintiff's allegations allow for an inference that the complained-of actions were motivated by her membership in a protected class. She alleges that she is disabled within the meaning of the ADA, [5] and over 40 years old, [22] ¶¶ 76, 99, and she alleges that the complained-of conduct occurred because of her membership in these protected classes. [22] ¶¶ 82, 104. *See Cole v. Bd. of Trustees of Northern Ill. Univ.*, 38 F. Supp.3d 925, 931 (N.D. Ill. 2014) (The link between the protected class and the adverse employment action "need not be set out with plausible factual allegations[;] instead a plaintiff can rely on conclusory allegations that the first and second are linked by racial animus."). Plaintiff further alleges that not a single individual

---

[5] Under the ADA, a plaintiff must allege that she is disabled, which the ADA defines as having a "physical or mental impairment that substantially limits one or more life activities" and that she is qualified to perform the essential functions of her job with or without reasonable accommodations. *See Gogos*, 737 F.3d at 1172 (quoting 42 U.S.C. § 12102(1)). In its motion to dismiss, the County makes no argument regarding the sufficiency of the allegations that her depression qualifies as a disability under the ADA, and thus this Court need not consider it. *See* 42 U.S.C. §§ 12102(1)(C) and 12102(2)(A); [22] ¶¶ 23, 29, 76, 85, 77.

outside of her protected class (*i.e.,* non-disabled and younger employees) experienced the same treatment she did. [22] ¶¶ 88, 105. Regarding the suspensions without pay, for instance, Plaintiff alleges that, on August 20, 2019, she was suspended for three days without pay for engaging in conduct that employees outside of her protected class, who were not disciplined, also engaged in. [22] ¶ 40. She also alleges that, after she was physically assaulted by two other employees, the County suspended Plaintiff for twenty-nine days without pay, but did not discipline the employees who committed the assault. [22] ¶ 69. As it relates to the other actions, Plaintiff alleges that younger and non-disabled employees were not otherwise denied the training and supplies needed to perform their job responsibilities. [22] ¶¶ 52, 63. These allegations of employees outside of Plaintiff's protected class receiving more favorable treatment, though conclusory at times, provide (at this early stage) a reasonable inference that the complained of conduct occurred because of Plaintiff's membership in one or more protected classes. *See Alamo*, 864 F.3d at 554 (holding plaintiff plausibly stated a claim for discrimination under Title VII because the complaint "connects this treatment to Mr. Alamo's protected status" because the complaint alleged that "other, non-Latino firefighters have not been subjected" to these types of "hurdles, obstacles, and challenges in their attempts to return to work after a medical leave of absence."). Thus, the allegations in the second amended complaint include "factual content that allows the court to draw the reasonable inference" that Plaintiff experienced an abusive working environment because of her disability and age. *Iqbal*, 556 U.S. at 678.

Finally, Plaintiff alleges a basis for employer liability—she states that her supervisors (Hightower, Wiley, and Vlahovic) themselves engaged in the complained-of conduct, *see, e.g.*, [22] ¶ 18, and that they took no action after Plaintiff reported harassment by her co-workers, [22] ¶ 17—both of which would provide an adequate basis for employer liability in a hostile work environment claims. *See, e.g., Cooper-Schut*, 361 F.3d at 426.

Taken together, these allegations provide a plausible inference that the complained-of conduct was motivated by discriminatory animus to Plaintiff's disability and age, and therefore they satisfy her "minimal" burden at the pleading stage. *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017). Accordingly, the Court declines to dismiss Counts I and III.

## C. Retaliation Claims (Counts II, IV, and VII)

Finally, the County challenges the sufficiency of Plaintiff's ADA, ADEA, and Title VII retaliation claims. [28] at 12. Because the analysis for these claims remain identical, the Court addresses them together. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("The anti-retaliation provision of the ADA uses similar language to that in Title VII; thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA.") (cleaned up); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 885 n.1 (7th Cir. 1996) ("The anti-retaliation provision of the ADEA has been recognized as parallel to the anti-retaliation provision of Title VII and cases interpreting the latter provision are frequently relied upon in interpreting the former.") (cleaned up).

The ADA, ADEA, and Title VII prohibit employers from retaliating against employees for taking part in a protected activity.  *See* 42 U.S.C. §§ 12203(a), 2000e-3(a); 29 U.S.C. § 623(d).  A plaintiff asserting a retaliation claim under the ADA, ADEA, and Title VII must "allege that she engaged in a statutorily protected activity and was subjected to an adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013).  The parties do not dispute that Plaintiff engaged in activities protected under the ADA, ADEA, and Title VII when she complained about harassment to the Hospital's EEO officer and filed six separate administrative charges with the IDHR and EEOC.  *See* [22] ¶¶ 21, 95, 111, 141; [22-1], [22-2], [22-3], [22-4], [22-5], [22-6]; *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009) ("Title VII protects employees 'from retaliation for complaining about the types of discrimination it prohibits.'") (quoting *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000)); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001) (filing charges with EEOC is protected under the ADEA).  The County argues, however, that Plaintiff fails to allege any adverse employment action and fails to allege that Plaintiff's supervisors had knowledge of Plaintiff's protected activities.  [28] at 12–13.[6]  Again, not so.

---

[6] Although the Seventh Circuit recognizes that a hostile work environment can be a form of retaliation, *see, e.g.*, *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 567 n.5 (7th Cir. 2004) ("The creation of a hostile work environment can be a form of retaliation."); *Flanagan v. Office of Chief Judge of Circuit Court of Cook Cnty., Ill.*, 893 F.3d 372, 374 (7th Cir. 2018) (noting that a *prima facie* case of retaliatory hostile work environment requires a showing, among other things, that the harassment was "in retaliation for protected behavior" and was "severe or pervasive."), hostile work environment claims are analytically distinct from retaliation claims.  *See Huri*, 804 F.3d at 833 (noting that Title VII forbids both hostile work environments and retaliation but that the substantive standards for these

First, adverse employment action in the retaliation context "simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri*, 804 F.3d at 833. Although "petty slights and minor annoyances" generally do not create such a deterrence, *Henry v. Milwaukee Cty.*, 539 F.3d 573, 587 (7th Cir. 2008), conduct that is less severe than adverse employment actions in the discrimination context may suffice. *See Huri*, 804 F.3d at n.3 (noting that discrimination claims, as opposed to retaliation claims, requires a "heavier burden" involving "a significant change in employment status, and often involves the employee's current wealth, her career prospects, working conditions, etc.").

Here, Plaintiff alleges several adverse employment actions. She alleges that she was yelled at by her supervisors and employees, "isolated" at work, denied the supplies and training she needed to perform her job, excluded from department meetings and communications, and suspended without pay on several occasions. Such actions, if proven, would dissuade a reasonable employee from engaging in activities protected under the ADA, ADEA, and Title VII. *See Huri*, 804 F.3d at 833 (holding allegations of screaming, false disciplinary reports, exclusion from social functions, and denial of time off "would certainly cause a reasonable worker to think twice about complaining about discrimination."); *Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016) (noting harassment can "constitute a materially adverse action for retaliation purposes."); *Whittaker v. Northern Illinois University*, 424 F.3d

---

claims are different). Here, Plaintiff's complaint only asserts retaliation claims and not a retaliatory hostile work environment claim.

640, 647 (7th Cir. 2005) (noting that a suspension without pay would constitute an adverse employment action for a retaliation claim).

The County also argues that Plaintiff fails to allege that her supervisors (Hightower, Wiley, and Vlahovic) were even aware of her protected activities and thus fails to allege a causal connection between any adverse employment action and the protected activities. [28] at 13.[7] Ultimately, Plaintiff must prove that her supervisors and co-workers were aware of her protected activities in order to establish a causal connection to any adverse employment actions. *See, e.g.*, *Tyburski*, 964 F.3d at 603 ("For a superior to have retaliated against an employee based on protected activity, the superior must have had knowledge of the protected activity."). But, at the pleading stage, she need only "allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoting *Luevano*, 722 F.3d at 1029)). She has met this burden. Plaintiff alleges that the conduct she complained of—the verbal harassment, the suspensions without pay, the exclusion from department meetings and communications, the denial of training and withholding of supplies needed to perform her job—not only occurred after she complained of discriminatory

---

[7] The County suggests that Hightower, Wiley, Vlahovic, and other County employees could not have known about Plaintiff's EEOC charges because they were not named as individual-respondents to the charges. [28] at 13–14. But, of course, there is no individual liability under the ADA, ADEA, and Title VII, so it would have been pointless for Plaintiff to name them individually. *See, e.g.*, *Williams v. Banning*, 72 F.3d 552, (7th Cir. 1995) (Title VII claims cannot be brought against individuals in their individual capacity); *Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) (same under ADA); *Horowitz v. Bd. of Educ.*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) ("Horowitz has brought her ADEA and retaliation claim based on the ADEA only against the Board. She has properly done so, as we have suggested that there is no individual liability under the ADEA."). In any event, the County points to no authority to support the proposition that the failure to name the individuals constitutes an independent basis for dismissal.

treatment to the EEO Officer and filed charges with the EEOC but increased in frequency and intensity as a result of her complaint and the filing of the charges. [22] ¶¶ 93, 114, 144. Such allegations are sufficient to state a retaliation claim. *See Carlson*, 758 F.3d at 828 (noting a plaintiff need only "allege that she engaged in a statutorily protected activity and was subjected to an adverse employment action as a result."); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (allegations stating "[s]ince Plaintiff began to complain about her lack of equal pay and filing her charge of discrimination with the EEOC, Plaintiff has been subjected to adverse employment actions by Defendants in retaliation for her complaints" and listing adverse actions sufficient to state a claim for Title VII retaliation). Indeed, one of Plaintiff's unpaid suspensions occurred within days of Plaintiff having filed a discrimination charge with the EEOC. *See, e.g.*, [22-3] (March 1, 2019 EEOC charge); [22] ¶ 41 (March 7, 2019 suspension). As with her hostile work environment claims, Plaintiff alleges just enough "factual content that allows the court to draw the reasonable inference" that Plaintiff was retaliated against for engaging in activities protected under the ADA, ADEA, and Title VII. *Iqbal*, 556 U.S. at 678. Accordingly, the Court denies the County's motion to dismiss Counts II, IV, and VII.

### IV.    Conclusion

For the reasons explained above, the Court grants in part, and denies in part, Defendant's partial motion to dismiss [28]: the Court dismisses without prejudice Plaintiff's Title VII claim (Count VI) but otherwise denies the motion.  The Court also denies as moot Defendant's request to stay discovery on Count V.


Dated: September 29, 2022                    Entered:

                                             _____
                                             John Robert Blakey
                                             United States District Judge